```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON
```

ANTIOP, INC.,                     )
                                  )
    Plaintiff,                    )
                                  )              Civil Case No.
v.                                )              16-cv-00051-JMH
                                  )
RECKITT BENCKISER                 )
PHARMACEUTICALS, INC., et         )
al.,                              )     **MEMORANDUM OPINION & ORDER**
                                  )
    Defendants.                   )

                                *** 

This matter is before the Court upon Defendants Reickitt Benckiser Pharmaceuticals, Inc., Indivior, PLC, and Indivior, Inc.'s Motion to Dismiss the Complaint [DE 13] pursuant to Fed. R. Civ. P. 12(b)(6) because the contract at issue contains a forum selection clause permitting Plaintiff AntiOp, Inc. ("AntiOp") to file this lawsuit in the state of New York. Plaintiff has filed a Response [DE 19], and Defendants have filed a Reply in further support of their Motion [DE 22].[1]

**I.**

AntiOp, a Kentucky corporation, is actively developing a naloxone nasal spray to treat heroin and opioid overdoses. Defendant Indivior, Inc., is the operating subsidiary of Defendant Indivior, PLC, a pharmaceutical company that

---

[1] Defendants have also filed a Motion for Leave to File a Surreply [DE 11], to which there is no objection. This motion is granted, and the tendered surreply shall be filed in the record of this matter.

specializes in the development, marketing, and sale of addiction treatment drug products. Indivior, PLC and Indivior, Inc. (collectively, "Indivior"), are subsidiaries of Defendant Reckitt Benckiser Pharmaceuticals, Inc. ("Reckitt").

In 2014, Reckitt, Indivior, and AntiOp entered into a development and asset purchase agreement ("Development Agreement") regarding a naloxone nasal spray. The parties subsequently amended the agreement in January and May of 2015. Pursuant to the Development Agreement, AntiOp granted Reckitt and Indivior the exclusive rights to AntiOp's naloxone nasal spray formulation. In return, Reckitt was to pay AntiOp once specific events outlined in the Development Agreement occurred. In particular, Section 2.07 called for a "Formulation Patent Milestone Payment," due once (1) AntiOp filed a Track 1 U.S. non-provisional patent application; (2) the Track 1 U.S. non-provisional patent application was issued with claims that ensure the Granted patent is listable in the FDA Orange Book (resource listing approved drug products with therapeutic qualities); (3) AntiOp filed an International PCT Patent; and (4) AntiOp delivered the executed Intellectual Property Assignment documents to Reckitt and Indivior.

The Development Agreement also included a choice of law provision and a forum selection clause. Section 9.11 provides that the Development Agreement "shall be governed by and

construed in accordance with the internal laws of the State if New York..." Section 9.12 provides as follows:

> Section 9.12 Submission to Jurisdiction. Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts located in the Southern District of New York, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

AntiOp filed both a Track 1 U.S. non-provisional patent application and an International PCT patent application for the naloxone nasal spray in November of 2014. On November 24, 2015, the United States Patent and Trademark Office issued a patent with claims directed to AntiOp's naloxone nasal spray formulation. However, on the previous day, November 23, 2015, the FDA sent notice to Indivior that the New Drug Application ("NDA") would not be approved as filed. The FDA provided Indivior with a list of actions necessary in order for its NDA to gain approval.

In its Complaint, AntiOp avers that Defendants breached the Development Agreement because AntiOp completed the conditions listed in Section 2.07 and is entitled to a payment of $3,000,000. Indivior contends that the second condition was incomplete because the Formulation Patent obtained by AntiOp does not contain claims that are listable in the Orange Book

3

because the FDA did not approve AntiOp's nasal spray formulation.

In their Motion to Dismiss for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), Defendants argue that Section 9.12 of the Development Agreement requires Plaintiff to bring the action within the Southern District of New York and, thus, precludes AntiOp from bringing suit in this district. AntiOp argues that the forum selection clause is permissive, not mandatory, and the matter may be adjudicated before this Court. For the reasons set forth below, Defendants' Motion to Dismiss will be denied.

## II.

Defendant seeks dismissal of the action before this Court under Fed. R. Civ. P. 12(b)(6), citing *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008) (*per curiam*) (citing *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir. 1999)) (remanding matter to district court for consideration of relief under forum selection clause on either motion to dismiss under Rule 12(b)(6) or motion to transfer under 28 U.S.C. § 1404).  A party bringing a motion under Rule 12(b)(6) asserts that the plaintiff has "failed to state a claim upon which relief can be granted" and tests whether, as a matter of law, the plaintiff is entitled to legal relief.  Dismissal is appropriate if the plaintiff fails to

provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court construes the complaint in the light most favorable to the plaintiff and accept all factual allegations as true, but the factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. The complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted).

The Court is not entirely persuaded that prevailing law in this Circuit demands resolution of the matter under Rule 12(b)(6).[2] In a case decided two years prior to *Langley*, the Court of Appeals for the Sixth Circuit addressed the impact of a forum selection clause on the proceedings under Fed. R. Civ. P. 12(b)(2), concluding that dismissal is appropriate where the facts, taken together and including the language of a forum selection clause, fail to establish a prima facie case for

---

[2] The Court does not particularly wish to interject itself into something that would be the bane of first year civil procedure students but observes that motions under Rule 12(b) may not provide the proper procedure for enforcing forum selection clauses.  The case law suggests that motions under Rule 12(b) are a poor fit at best.  From a structural perspective, a party seeking to enforce a forum selection clause would appear to raise a counterclaim under Fed. R. Civ P. 13 seeking enforcement of the forum selection clause and could seek dismissal of the entire action on a motion for judgment on the pleadings or a motion for summary judgment under Fed. R. Civ. P. 12(c) or 56.  The Court appreciates that this would impose a burden on the parties who wish to quickly resolve the issue of where a matter should be litigated as a threshold matter but would provide a more workable framework for enforcing (or declining to enforce, as the case may be) forum selection clauses.

5

personal jurisdiction. *Preferred Capital, Inc. v. Assoc. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (evaluating the motion to dismiss under Fed. R. Civ. P. 12(b)(2) and explaining that "the requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system" and that "[t]he use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court.") (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.*, 610 N.E.2d 987, 988 (Ohio 1993)); *see also Ferris v. Salter, P.C. v. Thomson Reuters Corp.*, 819 F.Supp.2d 667, 672-73 (E.D. Mich. 2011) (discussing and listing caselaw addressing proper procedural mechanism to address and resolve a motion to enforce a forum selection clause). Under Rule 12(b)(2), if the court does not conduct an evidentiary hearing, it considers the pleadings and affidavits in a light most favorable to the plaintiff; and the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion under 12(b)(2). *Id.* (citing *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). The end result is the same in the matter before the Court.

6

### III.

The question before the Court is not whether the forum selection clause applies or is enforceable – everyone agrees that it does and it is – but what it means. Does Plaintiff have an obligation or an option to bring this suit in the Southern District of New York under Section 9.12 of the Development Agreement?

As a general matter, "[t]he construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits", are interpreted by reference to ordinary contract principles, and should be upheld unless there is a strong showing that it should be set aside." *Crown Labs., Inc. v. Se. Commercial Fin., LLC*, No. 2:11-CV-185, 2012 WL 2126945, at *2 (E.D. Tenn. Apr. 30, 2012) (quoting *Wong v. Partygaming, Ltd.,* 589 F.3d 821, 828 (6th Cir. 2009); citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991); *In re Delta America Re Ins. Co.,* 900 F.2d 890, 892 (6th Cir. 1990)). Applying ordinary contract principles, the Court looks first at the language of 9.12 of the Development Agreement to determine whether it is "mandatory" or "permissive" in nature. *See id.* at *2 (citing *Cornett v. Carrithers,* 2012 WL 687011 at *2 (11th Cir. March 2, 2012); *Global Seafood Inc. v. Bantry Bay Mussels Ltd.,* 659 F.3d 221, 224 (2d Cir.2011); *IntraComm, Inc. v. Bajaj,* 492 F.3d 285, 290

7

(4th Cir.2007); *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)); *Griffin v. Baker & Taylor, Inc.*, Case No. 5:12-cv-00103, 2013 WL 610957, at *7 (W.D.Ky. Feb. 19, 2013) (quoting *Rivera v. Centro Medico de Turabo*, 575 F.3d 10, 17 (1st Cir. 2009). "A mandatory clause prescribes a specific forum in which litigation regarding the contracted-to subject matter must be brought; a permissive clause, by contrast, identifies a forum in which such litigation permissibly may be brought, but on a non-exclusive basis." *Crown Labs., Inc.*, 2012 WL 2126945 at * 2 (citing *Cornett,* 2012 WL 687011 at *2); *English Mountain Spring Water Co., Inc. v. AIDCO Intern., Inc.*, Case No. 3:07-cv-324, 2007 WL 3378344, at *2 (E.D.Tenn. Nov. 13, 2007) (explaining that permissive language simply prevent a would-be defendant from objecting to the designated forum should the plaintiff choose it); *Gen. Elec. Co. v. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) (explaining that mandatory forum selection clauses contain clear language stating that jurisdiction and venue are appropriate only in certain designated forums and are typically accompanied with the words "must" and "shall").

"'[A]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.'" *Intracomm, Inc. v. Bajaj*, 492 F.3d 285. 290 (4th Cir. 2007) (holding that clause

8

reading that "In the event that ... good faith negotiations do not result in a resolution of a dispute, either party shall be free to pursue its rights at law or equity in a court of competent jurisdiction in Fairfax County, Virginia" was permissive) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)); *Crown Labs., Inc.*, 2012 WL 2126945 at *3 (holding that "may" in a form selection clause is clearly not a word of exclusion but "simply serves to permit jurisdiction in" a particular court "without excluding the possibility of jurisdiction elsewhere," making a forum selection clause permissive rather than mandatory).

Section 9.12 does not clearly limit actions to the courts of a specified locale, as Defendants argue. Rather, matters arising out of the agreement "may be instituted in the federal courts located in the Southern District of New York." This language does not foreclose the possibility that a suit might be brought elsewhere, nor does the Court believe that the option granted by Section 9.12 is transformed into an obligation as Defendants argue because of the latter portion of the section: "each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding."

Ultimately, the Court agrees with Plaintiff that the language in the section is most similar to those cases in which

9

forum selection clauses were determined to be permissive rather than mandatory because they indicated that actions "may" be brought in a particular jurisdiction. *See Siteworks Solutions, LLC v. Oracle Corp.*, Case No. 08-2130, 2008 WL 4415075, at *2-3 (W.D. Tenn. Sept. 22, 2008) (holding that forum selection clause providing that "any [p]roceeding relating to the Agreement or the enforcement of this Agreement may be brought or otherwise commenced in any state or federal court located in the County of San Mateo, California or in the County of San Francisco" was permissive rather than mandatory); *Residential Finance Corp. v. Jacobs*, Case No. 2:13-cv-1167, 2014 WL 1233089, at *2 (S.D. Oh. March 25, 2014) (holding forum selection clause providing that a party "may" file suit in a certain jurisdiction is permissive rather than mandatory); *Florida State Bd. of Admin. v. Law Engineering and Envir. Servs. Inc.*, 262 F.Supp.2d 1004 (D. Minn. 2003) (holding forum selection clause stating that that legal action "may be brought" in Florida was permissive rather than mandatory); *Crown Labs., Inc.*, 2012 WL 2126945 at *3 (holding that forum selection clause containing the word "may" is permissive stating "[t]he word 'may' as used in the forum selection clause in the instant case, is clearly not a word of exclusion . . . Rather the word 'may' as used in the clause at issue in this case, simply serves to permit jurisdiction . . .

10

without excluding the possibility of jurisdiction elsewhere. . . .").

Defendants' reliance on *Caperton v. A.T. Massey Coal Co.*, 690 S.E.2d 322, 337-40 (W.Va. 2009), is inapposite as the language in the forum selection in this case is nothing like that in *Caperton*. *Id.* (holding that, because the forum selection clause provided that "all" actions "shall be filed in and decided by the Circuit Court of Buchanan County" the provision was mandatory). Nor is the language in the Development Agreement similar to that in *Fred Montesi's, Inc. v. Centimark Corp.*, No. 04-2957 Ma/A, 2006 WL 1164480 (W.D. Tenn. May 2, 2006), upon which Defendants also rely. *Id*. at *5 (holding that forum selection clause was mandatory where it read that "[j]urisdiction and venue of any action or proceeding . . . shall be vested in the state or federal courts in Washington County, Pennsylvania" and "[p]urchaser irrevocably waives any objections it now has or may hereafter have to the convenience or propriety of this venue.").

Ultimately, Defendants ask this Court to conclude that "any such suit, action or proceeding" in the latter portion of Section 9.12 is the same as "any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby" in the first portion of the section, but Defendants' reading does not give effect to all of

11

the words in Section 9.12 and disregards the choice of the word "may." Rather, reading the entire sentence and giving effect to all of the language agreed upon by the parties, it is clear that "any such suit, action or proceeding" is defined by the subset of actions "instituted in the federal courts located in the Southern District of New York." The Court rejects Defendants' argument that this reading overemphasizes the impact of the word "may" and ignores the mandatory language from the second part of Section 9.12. The two sections are not inconsistent when they are read together, as they must be. Section 9.12, read as a whole, is not subject to opposing, yet reasonable, interpretations and is not, thus, ambiguous as Defendants urge. Further, even if they could be understood to be inconsistent, the Court's reading is the only plausible reconciliation of them. *See Poundstone v. Patriot Coal Co. Ltd.*, 485 F.3d 891, 902 (6th Cir. 2007) (citing *North Star Co. v. Howard*, 341 S.W.2d 251, 255 (Ky. 1960)) (construing payment clause of contract under Kentucky law and concluding that, "[i]f a contract contains inconsistent clauses, they should be reconciled if possible . . . ."); *see also Bank of New York v. First Millennium, Inc.*, 598 F.Supp.2d 550, 556-57 (S.D.N.Y. 2009) (same, under New York law).

The Court concludes that Section 9.12 permits but does not mandate jurisdiction in the federal courts of the Southern

12

District of New York by virtue of the word "may." Giving the language of Section 9.12 its ordinary and normal meaning and giving meaning to every word in Section 9.12, the section clearly anticipates that the parties are not to challenge the exclusive jurisdiction of the courts in the Southern District of New York if a plaintiff elects to bring "any such suit, action, or pleading." "[S]uch suit, action, or pleading" is defined and limited by the situation where a party elects to file suit in the Southern District of New York. Plaintiff has not exercised its right under the contract to bring suit in the Southern District of New York, so the latter aspect of the provision simply does not come into play.

Accordingly, Defendants' Motion to Dismiss [DE 13] is **DENIED**.

This the 27th day of July, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge